UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 06 B 06677 |
| | ) | Chapter 13 |
| CHARLENE M. TEWELL, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the motion of Greenpoint Mortgage Corporation (the "Creditor") for relief from the automatic stay seeking annulment, or in the alternative, modification of the stay. For the reasons set forth herein, the Court grants the Creditor's motion and modifies the automatic stay to allow the Creditor to proceed with a mortgage foreclosure action in the state court.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### II. FACTS AND BACKGROUND

The Creditor holds the first mortgage lien on real property located at 6822 South Kenneth Avenue, Chicago, Illinois (the "Property") by virtue of a note and mortgage agreement dated July 20, 1998, executed by Alex Almaraz ("Almaraz"). The Debtor is not the maker of the note or the

-2-

mortgagor of the Property. On July 31, 1998, Almaraz executed a quit claim deed which transferred title of the Property to the Debtor, subject to the mortgage. That deed was recorded on February 4, 1999. Almaraz made the transfer to the Debtor notwithstanding a "due-on-sale" clause[1] in both the note and the mortgage, which states as follows: "If all or any part of the Property or any interest in it is sold or transferred . . . without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument." It is undisputed that the Creditor did not give its written consent prior to Almaraz transferring the Property to the Debtor. Moreover, the parties do not dispute that the Debtor did not assume the mortgage.

On June 6, 2006, the Creditor filed a mortgage foreclosure action in the state court. Thereafter, on June 8, 2006, the Debtor filed a Chapter 13 bankruptcy petition. In her plan, the Debtor seeks to cure the mortgage default and maintain current payments during the pendency of the case.[2] The Debtor's plan was confirmed on August 9, 2006.[3]

---

[1] A "due-on-sale" clause generally allows the lender the option to declare the entire loan amount due immediately if the borrower sells the secured property.

[2] On October 11, 2006, the parties entered into a stipulation and order that allowed the confirmed plan to be amended to provide for payment of pre-petition arrearage on the mortgage in the amount of $5,917.05. Further, the stipulation provided that "the Debtor may not provide for a cure to Creditor under her plan because the Debtor did not sign the note and mortgage, and is therefore not in contractual privity with Creditor[.]"

[3] The Creditor argues that it was not properly served with notice of the bankruptcy filing and, therefore, was not able to object to confirmation of the Debtor's plan. The Creditor agreed, however, that it would not pursue this point if the Debtor amended the plan so that the plan would not provide for a cure of the mortgage arrearage. The October 11, 2006 stipulation and order so provided. See n.2 supra.

-3-

Subsequently, on August 29, 2006, the Creditor filed the instant motion. The Creditor seeks relief from the automatic stay of 11 U.S.C. § 362. Specifically, the Creditor contends that the Debtor has no interest in the Property; she does not appear on the note and mortgage; and she does not have the right to cure the arrearage on the mortgage. Further, the Creditor argues that the transfer of ownership to the Debtor violates the due-on-sale clause contained in both the mortgage and note. Finally, the Creditor alleges that the Debtor's plan improperly modifies its rights in violation of 11 U.S.C. § 1322(b)(2). For these reasons, according to the Creditor, the Court should annul or modify the automatic stay pursuant to § 362(d) to allow it to continue its mortgage foreclosure proceedings.

The Debtor maintains that she has made the mortgage payments on the Property since the inception of the loan. She contends, without testimonial or documentary corroborative evidence, that the Creditor knew that she was not the mortgagor but continued to accept payments from her. Although such points have not been articulated in detail or with crystal clarity, the Debtor concludes that laches, estoppel, and waiver apply because the Creditor continued to accept payments from the Debtor for many years prior to the filing of her bankruptcy case.

Both the Creditor and the Debtor waived their rights to an evidentiary hearing and requested that the Court rule on the matter based on the papers submitted.

### III. DISCUSSION

The issues before the Court are whether the Debtor, as transferee of Property that is her primary residence, can defeat the due-on-sale clause by curing defaults under the mortgage through her Chapter 13 plan, and whether the Creditor, eight years after the Property was

-4-

transferred to the Debtor in violation of the due-on-sale clause, can enforce such provision. The Creditor contends that it is entitled to relief from the stay because the Debtor has no interest in the Property and the Debtor does not appear on the note and mortgage.[4] According to the Creditor, the Debtor does not have the right to cure the arrearage on the mortgage. The Creditor argues that when Almaraz quit-claimed his interest in the Property to the Debtor, this act was in violation of the due-on-sale clause. Further, the Creditor maintains that the plan modifies its rights as a home lender in violation of § 1322(b)(2) and that it is entitled to modification or annulment of the automatic stay under § 362(d) to allow it to proceed with the foreclosure of its mortgage.

### A.    Motions to Modify or Annul the Automatic Stay

The automatic stay under 11 U.S.C. § 362(a) was enacted "'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'" *In re Pleasant*, 320 B.R. 889, 893 (Bankr. N.D. Ill. 2004) (*quoting In re Rexene Prod. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)). Section 362(d) of the Bankruptcy Code provides for relief from the automatic stay and states in pertinent part as follows:

> (d)    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

---

[4] The Creditor is wrong in its assertion that the Debtor has no interest in the Property. Indeed, she was the grantee of Almaraz under the quit claim deed and is currently in possession of the Property.

(1)      for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2)      with respect to a stay of an act against property under subsection (a) of this section, if–

     (A)      the debtor does not have an equity in such property; and

     (B)      such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d).

Thus, § 362(d) provides two grounds under which relief from the automatic stay may be granted. *In re Jackson*, No. 98 B 15483, 1999 WL 703093, at *3 (Bankr. N.D. Ill. Sept. 9, 1999) (*citing In re 8th St. Vill. Ltd. P'ship*, 88 B.R. 853, 855 (Bankr. N.D. Ill.), *aff'd*, 94 B.R. 993 (N.D. Ill. 1988)). The first ground is cause, including lack of adequate protection. 11 U.S.C. § 362(d)(1). "Cause" has not been clearly defined and is determined on a case-by-case basis. *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991). The second ground is that the debtor does not have equity in the property and the property is unnecessary to an efficacious reorganization. 11 U.S.C. § 362(d)(2). The first ground is the one applicable here: whether the Creditor can assert its rights under the due-on-sale clause as "cause" for relief from the stay under § 362(d)(1).

As the party requesting relief from the stay, the Creditor only bears the burden on the issue of the Debtor's equity in the Property. *See* 11 U.S.C. § 362(g)(1). *See also Fed. Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 208 (N.D. Ill. 1993); *In re Standfield*, 152 B.R. 528, 534 (Bankr. N.D. Ill. 1993). The Debtor, opposing such relief, has the burden of proof on all other issues. *See* 11 U.S.C. § 362(g)(2). *See also Fed. Nat'l Mortgage*, 153 B.R. at 208; *Standfield*, 152 B.R. at 534. The decision to modify or otherwise annul the automatic stay pursuant to § 362(d) is committed to the sound discretion of the bankruptcy court.

*In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995); *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985); *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982).

The Creditor asserts an unavoided mortgage lien in the Property and seeks to have the automatic stay modified or annulled so that it can continue with foreclosure proceedings in the state court. As a creditor seeking to modify or annul the stay, the Creditor has the burden of showing the existence, the validity, and the perfection of its secured claim against the Property. *See In re S. Ill. Railcar Co.*, 301 B.R. 305, 309 (Bankr. S.D. Ill. 2002). State law determines whether a valid security interest exists in property. *See Butner v. United States*, 440 U.S. 48, 54-57 (1979) (finding that the existence, nature, and extent of a security interest in property is governed by state law); *see also In re Martin Grinding & Mach. Works, Inc.*, 793 F.2d 592, 594 (7th Cir. 1986) (*citing Butner*). The parties do not dispute that Illinois law governs in this matter. Moreover, the parties do not dispute that the Creditor has a valid mortgage lien against the Property by virtue of the note and mortgage.

### B.    Due-on-Sale Clauses

The Bankruptcy Code is silent on the subject of due-on-sale clauses. Thus, under *Butner*, the Court must turn to state law, which in this matter is Illinois. The Illinois Supreme Court has expressly held that due-on-sale provisions are valid per se. *Abdul-Karim v. First Fed. Sav. & Loan Ass'n of Champaign*, 462 N.E.2d 488, 490 (Ill. 1984); *Provident Fed. Sav. & Loan Ass'n v. Realty Ctr., Ltd.*, 454 N.E.2d 249, 251 (Ill. 1983); *Baker v. Loves Park Sav. & Loan Ass'n*, 333 N.E.2d 1, 4 (Ill. 1975); *see also Cagan v. Intervest Midwest Real Estate Corp.*, 774 F. Supp. 1089, 1093-94 (N.D. Ill. 1991) (recognizing that that due-on-sale clauses are valid under Illinois law).

Moreover, due-on-sale clauses are a "fundamental aspect of a mortgagee's rights. . . ." *In re Allen*, 300 B.R. 105, 119 (Bankr. D. D.C. 2003).

There is a split of authority in this court as well as others regarding how a debtor, who is not the original mortgagor, can treat the mortgage that contains a due-on-sale clause in a Chapter 13 plan. One line of cases has held that treatment of the mortgage in the plan would be an impermissible modification of the objecting mortgage holder's rights in violation of 11 U.S.C. § 1322(b)(2).[5] *See Allen*, 300 B.R. at 119-20; *In re Parks*, 227 B.R. 20, 25 (Bankr. W.D.N.Y. 1998); *In re Martin*, 176 B.R. 675, 677 (Bankr. D. Conn. 1995); *In re Threats*, 159 B.R. 241, 243 (Bankr. N.D. Ill. 1993) (Katz, J.); *In re Green*, 42 B.R. 308, 309 (Bankr. D. N.H. 1984). The other line of cases allows a debtor to include the mortgage in the plan based on a broad interpretation of the term "claim" even though the debtor is not in privity with the mortgagee.[6]

---

[5] Section 1322(b)(2) provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b)(2).

[6] This line of cases evolved after the United States Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78 (1991). The Supreme Court was faced with the issue of whether a debtor could include a mortgage in a Chapter 13 plan after the personal obligation secured by the mortgaged property had been discharged in a Chapter 7 case. The Court held that the term "claim" as defined in 11 U.S.C. § 101(5) included mortgage obligations for which a debtor's personal liability had been discharged in a Chapter 7 case. The Court concluded that the mortgage that survived the Chapter 7 discharge of the debtor's personal liability could be treated in the same debtor's subsequent Chapter 13 plan. Based

-8-

See *In re Flores*, 345 B.R. 615, 617 (Bankr. N.D. Ill. 2006) (Cox, J.); *In re Garcia*, 276 B.R. 627, 642-43 (Bankr. D. Ariz. 2002); *In re Trapp*, 260 B.R. 267, 271-72 (Bankr. D. S.C. 2001); *In re Rutledge*, 208 B.R. 624, 628 (Bankr. E.D.N.Y. 1997); *In re Allston*, 206 B.R. 297, 299 (Bankr. E.D.N.Y. 1997). *Garcia* is the leading case in this line and noted that Arizona law invalidates any attempt to prohibit a purchaser from acquiring rights in property subject to a lien, even one with a due-on-sale provision. 276 B.R. at 631 n.11. (noting that under Arizona law, due-on-sale clauses have been found to constitute an unreasonable restraint on alienation). This is not the law in Illinois. Hence, *Garcia* is distinguishable on this point and inapposite.

Many of these cases discuss the issue of whether a debtor who was not a party to the mortgage is in privity with the mortgagee. In the October 11, 2006, stipulation and order, the parties in this matter agreed that "because the Debtor did not sign the note and mortgage, . . . [she] is therefore not in contractual privity with Creditor[.]" Based on this language, the Court will not further address the lack of privity point.[7]

---

upon the broad interpretation of the term "claim" in the *Johnson* case, this line of authority holds that debtors can cure defaulted mortgages within a Chapter 13 plan even though no privity of contract exists between the debtors and creditors. *Johnson*, however, did not involve a due-on-sale clause, and thus, is not exactly on point or controlling with respect to the matter at bar. To date, the Seventh Circuit has not ruled on the ultimate issue of whether a due-on-sale clause in a home mortgage is one of the unmodifiable rights of home mortgage holders protected by § 1322(b)(2).

[7] The Court questions the cases that continue to require privity between debtors and creditors after the Supreme Court's decision in *Johnson*. Indeed, that Court concluded that a debtor can include a non-recourse claim in a Chapter 13 plan, even when the debtor is not personally liable for the underlying debt. Thus, it is the case here that the Creditor's claim is in rem as to the Property, not in personam with recourse against the Debtor, similar to *Johnson*. That such rights are "claims" as defined in § 101(5), however, does not override or nullify the prohibition on modification contained in § 1322(b)(2).

Case 06-06677    Doc 26    Filed 10/23/06    Entered 10/23/06 16:34:46    Desc Main
Document      Page 9 of 17

-9-

After a careful reading of the cases that have dealt with this issue, the Court is persuaded by and agrees with the line of decisions that holds that a debtor who obtained residential property from the original mortgagor without adhering to the due-on-sale clause is not permitted to cure the mortgage defaults through the Chapter 13 plan over the objection of the mortgage holder.

Pursuant to § 1322(b)(2), a debtor may not modify the rights of a secured creditor who has an interest in real property securing the debtor's principal residence.[8] The United States Supreme Court has stated that the "rights" referred to in § 1322(b)(2) are those "reflected in the relevant mortgage instruments, which are enforceable under [state] law." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329 (1993). The Debtor has neither alleged nor shown that a due-on-sale clause is not enforceable in Illinois. Indeed, as the Court noted *supra*, due-on-sale clauses are valid in Illinois and the Bankruptcy Code is silent with respect to same. Hence, under *Butner*, due-on-sale clauses on Illinois real property are enforceable in this Court at the option of holders of Illinois home mortgages with such clauses as part of the covenants of such encumbrances. To allow Chapter 13 debtors to effectively ignore due-on-sale clauses invoked by holders of home mortgages stretches the language of § 1322(b)(2) past the breaking point.

The Code does allow some benefits to debtors with respect to home mortgages. Section 1322(b)(3) states that a plan may "provide for the curing or waiving of any default[.]" 11 U.S.C. § 1322(b)(3). Additionally, § 1322(b)(5) provides that notwithstanding § 1322(b)(2), a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" 11 U.S.C. § 1322(b)(5).

---

[8]   There is no dispute that the Property at issue is the Debtor's principal residence.

-10-

The Seventh Circuit has stated that the term "cure" "refers to . . . the restoration of the way things were before the default. Thus, the plain meaning of 'cure,' as used in § 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the *status quo ante*." *In re Clark*, 738 F.2d 869, 872 (7th Cir. 1984). Consequently, those sections specifically allow a defaulting debtor to cure defaults and deaccelerate an accelerated delinquent home mortgage and effectively reinstate same during the course of a Chapter 13 plan, but that is all. Other rights under home mortgages in Chapter 13 cannot be otherwise modified because of the language in § 1322(b)(2).

The Court finds that treatment of the mortgage in the Debtor's plan would be an impermissible modification of the Creditor's right to, at its option, enforce the due-on-sale clause in violation of § 1322(b)(2). After all, due-on-sale clauses are valid in Illinois and are among the various enforceable rights of a mortgage holder. Thus, permitting the circumvention of such clauses works an impermissible modification of the rights of the mortgagee. *Allen*, 300 B.R. at 119. A "cure" here would require restoring full title to Almaraz, the original mortgagor. Such an act would "restore matters to the *status quo ante*." *See Clark*, 738 F.2d at 872. However, such a "cure would be fruitless because the automatic stay would not apply to a debtor without title to the mortgaged property or personal liability on the debt." *Allen*, 300 B.R. at 119. The Creditor's rights in the Property arise and are defined in the note and mortgage, yet there is no mortgagor-mortgagee relationship to restore. *See Threats*, 159 B.R. at 243. Accordingly, there can be no cure vis-á-vis the Debtor–the mortgagor here was Almaraz, not the Debtor. If Congress wanted to modify or negate the effect of due-on-sale clauses, it could so legislate as it has done for ipso facto bankruptcy clauses in 11 U.S.C. §§ 365(b)(2)(A) and 541(c)(1)(B).

In sum, the Court holds that not enforcing the due-on-sale clause when invoked by the holder would impermissibly modify the Creditor's rights in violation of § 1322(b)(2). As reminded by the Seventh Circuit, the Court lacks authority to depart from provisions of the Code in order to implement its own views of wise policy. *See In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004). Consequently, the Debtor's plan cannot cure the arrearage on the mortgage.

Because Almaraz, the mortgagor, conveyed his interest in the Property to the Debtor subject to the due-on-sale clause, the Court finds that the Creditor's interests under the mortgage, and specifically, its rights under the clause, are not adequately protected. Hence, the Creditor has met its burden of showing that just cause exists to modify the automatic stay pursuant to § 362(d)(1) to allow the Creditor to proceed with the foreclosure action.

### C.    Whether the Doctrines of Laches, Estoppel, and Waiver Prohibit the Relief Sought By the Creditor

The Debtor argues that laches, estoppel, and waiver apply here to defeat the Creditor's motion because the Creditor continued to accept payments from the Debtor for many years prior to the filing of the bankruptcy case. The Court will address each point in turn.

#### 1.    Laches

The Debtor makes the argument that the Creditor is barred by the doctrine of laches from asserting its rights under the due-on-sale clause because it continued to accept payments from the Debtor prior to the filing of the bankruptcy case.

Laches is an equitable doctrine that is properly invoked when unreasonable delay in raising a claim prejudices the opposing party. *Tully v. State*, 574 N.E.2d 659, 662 (Ill. 1991); *In re Sharena H.*, 852 N.E.2d 474, 481 (Ill. App. Ct. 2006) (*citing Tully*); *People v. Hawkins*, 690

-12-

N.E.2d 999, 1005 (Ill. App. Ct. 1998) (same). "The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Tully*, 574 N.E.2d at 662. In order for laches to apply, the party asserting the defense must establish two elements: (1) lack of diligence by the party against whom the defense is asserted; and (2) prejudice arising from the delay. *Id.*; *Sharena H.*, 852 N.E.2d at 481.

The Court finds that the Debtor has not shown a lack of diligence on the part of the Creditor and prejudice arising to the Debtor as a result of the delay. This case was filed a mere two days after June 6, 2006, when the Creditor filed a mortgage foreclosure action. The Creditor has now invoked the provisions of the due-on-sale clause found in the note and mortgage after the Debtor's default in payments. The fact that the Creditor did not raise these provisions immediately after the Property was transferred to the Debtor by Almaraz, but waited until the note and mortgage were in default, does not ipso facto constitute a lack of diligence on its part. Moreover, the Debtor has failed to show any evidence establishing prejudice resulting from the alleged delay. Apparently, the Debtor has enjoyed the use and occupancy of the Property at all times, notwithstanding her defaults. There is no evidence to show that the Creditor was aware of the conveyance in 1998 or the recording of the quit claim deed in 1999, nor is there any evidence that the Creditor had actual knowledge of the true situation between its mortgagor, Almaraz, and the Debtor. Consequently, the Court rejects the Debtor's argument that the Creditor is barred from asserting its rights under the due-on-sale clause pursuant to the doctrine of laches.

## 2. Estoppel

Next, the Debtor argues that the Creditor should be estopped from asserting its rights under the due-on-sale clause because it accepted mortgage payments from the Debtor pre-petition.

Equitable estoppel arises through a party's voluntary conduct whereby he is precluded from asserting his rights against the other party who in good faith relied on such conduct and was thus led to change his position to his detriment. *Wald v. Chi. Shippers Ass'n*, 529 N.E.2d 1138, 1148 (Ill. App. Ct. 1988). "Under Illinois law, '[t]he test used to evaluate an estoppel claim is whether, considering all the circumstances of the specific case, conscience and honest dealing require that a party be estopped.'" *In re Krueger*, 192 F.3d 733, 740 (7th Cir. 1999) (*quoting Hubble v. O'Connor*, 684 N.E.2d 816, 823 (Ill. App. Ct. 1997)). There are six requirements to establish a claim of estoppel: (1) voluntary words or conduct by the estopped party amounting to a misrepresentation or concealment of material facts; (2) actual or implied knowledge of the estopped party that the representations were not true; (3) lack of knowledge of the true facts by the innocent party both at the time made or at the time acted upon; (4) intent, or a reasonable expectation, on the part of the estopped party that the innocent party would act on the misrepresentations; (5) a reasonable, good faith, detrimental change of position by the innocent party based on the misrepresentations; and (6) prejudice to the innocent party. *Id.* at 740-41; *PPM Fin., Inc. v. Norandal USA, Inc.*, 297 F. Supp. 2d 1072, 1092 (N.D. Ill.) (*citing Vaughn v. Speaker*, 533 N.E.2d 885, 890 (Ill. 1988)), *aff'd*, 392 F.3d 889 (7th Cir. 2004). In order to prevail on a theory of estoppel, a party must establish by "clear and unequivocal" proof that he relied on representations or acts of the other party and had "no knowledge or convenient means of knowing the true facts." *Wald*, 529 N.E.2d at 1148.

-14-

Based on the record, the Court finds that the Debtor failed to demonstrate proof of each element required for application of equitable estoppel. No evidence was proffered to show that the Creditor intentionally misled the Debtor in connection with the due-on-sale clause, or that the Creditor took some action that indicated it would not enforce the due-on-sale clause, and somehow lulled the Debtor into a false sense of security that it would not do so. The Creditor exercised its option to enforce the clause early on in this case when the Debtor ceased making the mortgage payments. Further, there is no showing whether any words or conduct of the Creditor led the Debtor to take some action she would not have taken but for those words or actions. There is no evidence that the Debtor changed her position based on the Creditor's actions or inactions. The element of actual and reasonable reliance by the Debtor is also lacking, as is the showing of actual injury or prejudice to the Debtor resulting from the reasonable reliance.

In sum, the Debtor has failed to show by "clear and unequivocal" proof that the Creditor made a knowing misrepresentation on which the Debtor reasonably relied or that the Debtor had no knowledge or convenient way to discover the true facts. Therefore, the Court finds without merit the Debtor's argument that the Creditor should be estopped from asserting its rights under the due-on-sale clause.

3.  **Waiver**

The Debtor also makes the argument that the Creditor waived its rights under the due-on-sale clause because it continued to accept payments from the Debtor prior to the filing of the bankruptcy case.

Under Illinois law, waiver is the intentional relinquishment or abandonment of a known right. *PPM Fin.*, 297 F. Supp. 2d at 1087; *Vaughn*, 533 N.E.2d at 890; *Ill. State Bar Ass'n Mut.*

*Ins. Co. v. Coregis Ins. Co.*, 821 N.E.2d 706, 717 (Ill. App. Ct. 2004); *Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1118 (Ill. App. Ct. 1995). Before a party is considered to have waived a right, "a clear and distinct manifestation of such an intent must be found." *Am. Nat'l Bank & Trust Co. of Chi. v. K-Mart Corp.*, 717 F.2d 394, 398 (7th Cir. 1983). A waiver may be explicit or implicit. *Dominick's Finer Foods, Inc. v. Makula*, 217 B.R. 550, 555 (N.D. Ill. 1997), *aff'd*, 172 F.3d 493 (7th Cir. 1999). In particular, implied waiver requires that an intention to waive be plainly inferred from the circumstances and that the waiving party make a "clear, unequivocal, and decisive act" indicating such waiver. *Herzog v. Leighton Holdings, Ltd.*, 239 B.R. 497, 509 (N.D. Ill. 1999) (internal quotation omitted); *City of Chi. v. Mich. Beach Hous. Coop.*, 609 N.E.2d 877, 887 (Ill. App. Ct. 1993). The party claiming an implied waiver has the burden of proving a clear, unequivocal, and decisive act of the other party manifesting an intention to waive its rights. *In re Nitz*, 739 N.E.2d 93, 103 (Ill. App. Ct. 2000).

A party to a contract may waive, by express agreement or by its course of conduct, its legal right to strict performance of the terms of the contract. *Lake County Grading*, 654 N.E.2d at 1118. "The waiver doctrine is intended to prevent the waiving party from lulling another into a false belief that strict compliance with a contractual duty will not be required and then suing for noncompliance." *Id.* Where the evidence regarding a party's conduct during the relevant period is undisputed, the court may determine waiver as a matter of law. *PPM Fin.*, 297 F. Supp. 2d at 1087; *Wald*, 529 N.E.2d at 1148.

The Court rejects the Debtor's argument that the Creditor waived its right to assert the due-on-sale clause because there is no evidence to establish the requisite elements. The Court

-16-

finds that the Creditor did not explicitly waive its rights. Further, the Court finds that the Creditor did not implicitly waive its right to invoke the due-on-sale clause. Pursuant to the language of the due-on-sale clause in the note and mortgage, the Creditor "may, *at its option*, require immediate payment in full of all sums. . . ." (emphasis supplied) That the Creditor did not opt to invoke the due-on-sale clause immediately following the transfer of the Property by Almaraz to the Debtor, and only did so when a default in payments occurred, does not constitute a waiver of the Creditor's right to invoke that provision at a later date. The Creditor's continued acceptance of the mortgage payments from the Debtor even though she was not the mortgagor, does not constitute a clear, unequivocal, and decisive act to waive its rights. Thus, the Court finds that the Creditor did not waive its right to invoke the due-on-sale clause.

### IV. CONCLUSION

For the foregoing reasons, the Court grants the Creditor's motion to modify the automatic stay in order to allow it to proceed with the mortgage foreclosure action in the state court.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 10/23/6

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

**Charlene M. Tewell**
**Bankruptcy No. 06 B 06677**

Peter C. Bastianen, Esq.
Gloria C. Tsotsos, Esq.
Codilis & Associates, P.C.
15W030 N. Frontage Road, Suite 100
Burr Ridge, IL 60527

Brian C. Pedersen, Esq.
Robert J. Adams & Associates
125 S. Clark Street, Suite 1810
Chicago, IL 60603

Marilyn O. Marshall, Chapter 13 Trustee
224 S. Michigan Avenue
Suite 800
Chicago, IL 60603

AO 72A
(Rev. 8/82)